IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| MINERAL MET, INC. (A Division of Chemalloy Company), | ) ) ) | COMPLAINT JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race (black) and retaliation for opposing discriminatory practices, and to provide appropriate relief to Langston Satterwhite and a class of black employees who were adversely affected by such practices. As articulated with greater particularity in paragraphs 7 through 12 below, the Equal Employment Opportunity Commission (the "Commission") alleges Defendant, Mineral Met, Inc. (A Division of Chemalloy Company), discriminated against Mr. Satterwhite and a class of black employees on the basis of their race (black), when they were subjected to differential terms and conditions of employment, which included but was not limited to a hostile work environment, differential discipline and unlawful discharge on the basis of their race (black).

The Commission further alleges Defendant retaliated against Langston Satterwhite after he complained of race discrimination, by continuing to harass and unfairly discipline him. The Commission alleges that Defendant's actions led Mr. Satterwhite and other black employees to

constructively discharge from their positions. As a result of Defendant's actions, Mr. Satterwhite and a class of black employees suffered emotional distress and backpay damages.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f) and (3), ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio.

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, Mineral Met, Inc. (A Division of Chemalloy Company) ("Defendant" or "Mineral Met"), has continuously been and is now doing business in the State of Ohio and the City of Cleveland and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant had continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6.　　More than thirty days prior to the institution of this lawsuit, Langston Satterwhite filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.　　Since at least 2003, Defendant Employer has engaged in unlawful employment practices at its Cleveland, Ohio facility, in violation of sections 703(a)(1) of Title VII, 42 U.S.C. Section 2000e-2(a)(1) and 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a). These unlawful practices include, but are not limited to, the following:

(a)　　In April 1991, Langston Satterwhite (black) began working for Defendant as a quality control technician. He was promoted to quality control lead technician in 1995.

(b)　　He was promoted again in 1998 to become a quality control supervisor. At all relevant times throughout his employment, Mr. Satterwhite's performance was excellent and satisfactory.

(c)　　Starting in or about 2003, Defendant began to subject Mr. Satterwhite to an ongoing campaign of racial hostility and retaliation.

(d)　　Mr. Satterwhite accused Defendant of race discrimination. After Mr. Satterwhite's complaint, his supervisor, Tim Iscrupe (white), began to unfairly discipline Mr. Satterwhite for a variety of petty and insignificant matters.

(e)　　For example, he was disciplined for using his cell phone and having facial hair, while his white co-workers were not disciplined for doing the same things.

(f)　　Iscrupe also took away some of Mr. Satterwhite's work duties, subjected him to heightened scrutiny regarding his work, and moved his office from the second floor where all the managers worked, to the basement with his subordinates.

3

(g) Mr. Satterwhite repeatedly complained about the racial discrimination and retaliation imposed by Defendant. He also complained about differential treatment directed against other black employees, as described in more detail below. Yet, his complaints only intensified the racially discriminatory treatment imposed against him and other black employees.

(h) As a result of Defendant's racially discriminatory and retaliatory behavior, Mr. Satterwhite was left with no choice but to resign from Defendant.

(8) The effect of the practices complained of in paragraph 7(a) through (h) above have been to deprive Langston Satterwhite equal employment opportunities and otherwise adversely affect his status as an employee because of his race, in violation of Title VII.

(9) The unlawful employment practices complained of in paragraph 7(a) through (h) above were intentional and were done with malice or with reckless indifference to the federally protected rights of Mr. Satterwhite.

(10) Since at least 2003, Defendant Employer has also engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by disparately treating a class of black employees, by also subjecting them to differential terms and conditions of employment and a hostile work environment based on their race (black). These unlawful practices include but are no limited to the following:

(a) Defendant routinely cited black employees for alleged policy violations, while their white counterparts were never disciplined for engaging in the same behavior.

(b) Michael Byrd (black) began working for Defendant in January 2006 as a machine worker.

(c) Mr. Byrd was repeatedly disciplined without his knowledge for incidents that Defendant failed to advise him were inappropriate or contrary to policy.

4

(d) For instance, he was disciplined for allegedly operating and not reporting damaged machinery. However, another white employee advised management that he, and not Mr. Byrd, was the one who operated the damaged machinery and failed to report it.

(e) Defendant ultimately terminated Mr. Byrd for actions he never committed, nor was he advised were wrong.

(f) Black employees were also subject to racist animus in the workplace, which included but was not limited to, a white supervisor placing a hangman's noose on a piece of machinery, and wearing a bandana with a confederate flag on his welder's cap. While black employees complained to management about this racially offensive behavior, Defendant permitted the behavior to continue.

(g) As a result of Defendant's racially discriminatory behavior, some black employees were also left with no choice but to resign from Defendant.

(11) The unlawful employment practices complained of in paragraphs 10(a) through (g) have been to deprive black workers equal employment opportunities and otherwise adversely affect their status as employees because of their race, in violation of Title VII.

(12) The unlawful employment practices complained of in paragraph 10(a) through (g) above were intentional and were done with malice or with reckless indifference to the federally protected rights of the class of black employees.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from continuing to have practices which disparately treat black employees, and any other employment practice which discriminates on the basis of race and retaliation.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discrimination and retaliation.

D. Order Defendant to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-retaliation; and requiring all managers and supervisors to report any incidents and/or complaints of discrimination and/or retaliation of which they become aware to the department charged with handling such complaints.

E. Order Defendant to make whole Langston Satterwhite and a class of black employees by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F.      Order Defendant to make whole Langston Satterwhite and a class of black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7, 8, 9, 10, 11 and 12 above, including but not limited to out-of-pocket losses in amounts to be determined at trial.

G.      Order Defendant to make whole Langston Satterwhite and a class of black employees by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 7, 8, 9, 10, 11 and 12 above, including pain and suffering, humiliation, embarrassment, loss of life's pleasures, depression, anxiety, stress, panic, and other physical, psychological, and emotional symptoms and conditions, in amounts to be determined at trial.

H.      Order Defendant to pay Langston Satterwhite and a class of black employees punitive damages for its malicious and reckless conduct described in paragraphs 7, 8, 9, 10, 11 and 12 above, in amounts to be determined at trial.

I.      Grant such further relief as the Court deems necessary and proper in the public interest.

J.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Ronald S. Cooper
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1801 L. Street, NW
Washington, DC 20507

*[signature]*
Jacqueline H. McNair
Regional Attorney

*[signature]*
Terrence R. Cook
Supervisory Trial Attorney

*[signature]*
Woody Anglade
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Telephone (215) 440-2814
Fax (215) 440-2674